IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MARY E. BAKEWELL, | ) | Civil No.: 3:10-cv-01525-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Tim Wilborn
       Wilborn Law Office, P.C.
       PO Box 2768
       Oregon City, OR 97045

             Attorney for Plaintiff

       S. Amanda Marshall, U.S. Attorney
       Adrian L. Brown, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204

FINDINGS AND RECOMMENDATION – 1

Kathryn Ann Miller
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Mary Bakewell brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a decision denying her application for Disability Insurance Benefits (DIB).  Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the decision of the Commissioner should be reversed and the action should be remanded to the Agency for an award of benefits.

### **Procedural Background**

Plaintiff filed an application for disability benefits on March 6, 2003, alleging that she had been disabled since May 19, 2002.  After the claim was denied initially and upon review, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held before ALJ John J. Madden, Jr. on November 2, 2005.

In a decision filed on June 26, 2006, ALJ Madden found that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on July 5, 2007, when the Appeals Council denied Plaintiff's request for review.

Plaintiff appealed the denial of her application for benefits to the United States District Court for the District of Oregon.  On September 17, 2008, the Honorable Anna J. Brown entered an Opinion and Order affirming the Agency's decision.  Plaintiff appealed to the Ninth Circuit Court of Appeals.  On January 4, 2010, the Ninth Circuit ruled that the ALJ predicated his conclusion that Plaintiff was not disabled on an erroneous factual finding that Plaintiff's migraines were not a severe impairment and committed legal error by ignoring the findings of Plaintiff's examining physician, Dr. Roberts regarding limitations on Plaintiff's repetitive use of her hand.  The Ninth Circuit reversed and remanded "with directions to reassess Bakewell's claim consistent with this disposition."

While the current case was pending appeal, Plaintiff reapplied for benefits with an amended alleged onset date of July 30, 2007.  In a decision filed November 4, 2008, ALJ Madden found that Plaintiff was disabled from July 30, 2007, going forward.

After remand from the Ninth Circuit, a brief procedural hearing was held before ALJ Madden on August 4, 2010 on Plaintiff's initial application for benefits.  In a decision dated August 18, 2010, ALJ Madden found that Plaintiff was not disabled during the period of May 19, 2002 to July 30, 2007.  In the present action, Plaintiff seeks review of that decision.

**Factual Background**

Plaintiff was born on October 30, 1952.  She was approaching 50 years old at the time of the alleged onset of disability in 2002 and was 53 years old at the time of the hearing.  Plaintiff has a high school education.  She attended vocational school and received secretarial and medical transcriptionist training.  Plaintiff has past relevant work experience as a medical transcriptionist.

FINDINGS AND RECOMMENDATION – 3

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.

 If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

### **Medical Record**

Plaintiff's extensive medical record covers treatment of numerous impairments over a lengthy time period.  This record was thoroughly presented and discussed in the pleadings and the District Court's Opinion and Order associated with Plaintiff's earlier action.  The significant issues currently before this court, as framed by the Ninth Circuit's remand order and the parties' arguments, center on Plaintiff's migraine headaches and the assessment by a treating physician of Plaintiff's repetitive use of her hands.  In this Findings and Recommendation, I will address only the medical evidence that is relevant to those issues.

I. **Plaintiff's Migraines**

During a December 12, 2002 clinic visit, Plaintiff reported experiencing migraines "no more than twice a month" and took Zomig "with good effect."  On April 19, 2004, Plaintiff requested a refill of her Zomig prescription and reported she was experiencing three headaches per month and needed to take two Zomig per headache.  During a visit on October 29, 2004, Plaintiff discussed her migraine headaches with Dea Nason, FNP.  Plaintiff reported that her migraine symptoms tended to be alleviated with Zomig but that she occasionally has a migraine that lasts two to three days and the "Zomig is not helpful with persistent symptoms."  Plaintiff was given samples of Imitrex for her migraines.

On January 3, 2005, a Monday, Plaintiff called the Community Health Center reporting having had a migraine headache since the previous Saturday.  Plaintiff reported that she had taken two Imitrex with some relief but her symptoms had later increased and she was experiencing nausea.  During an office visit on March 17, 2005, Plaintiff reported she was continuing to have migraines one to two times per month and that Imitrex usually worked but sometimes did not and she would have a headache for three to four days accompanied by nausea, vomiting and photosensitivity.  Plaintiff visited the Community Health Center on August 5, 2005 and reported that she was in the fourth day of experiencing a migraine headache.  Plaintiff told Lisa Clayton, FNP, that she had taken some Imitrex earlier in the week but it was not effective so she had not taken any more.  Plaintiff also took some Vicodin with no result.  Plaintiff reported this was a "typical migraine" and described pain behind her eyes, photophobia, nausea and vomiting.  FNP Clayton gave Plaintiff samples of Zomig and instructed Plaintiff to go the emergency room for injectable narcotics if the headache did not subside.

During a June 1, 2006 visit, Plaintiff reported experiencing one to two migraines a month that lasted up to three days each and only occasionally improved with the use of Imitrex. Plaintiff reported to FNP Collins that she thought that her estrogen injections may be contributing to her headaches and wanted to wean herself off the injections. Chart notes indicate that Plaintiff was to extend the time between estrogen injections until use was discontinued and monitor the frequency and duration of her headaches. In an office visit on October 4, 2006, establishing care with Lynn Sullivan, FNP, Plaintiff described her migraines as becoming more severe in frequency and duration. Plaintiff reported that she was experiencing migraines close to once a week with each headache lasting approximately five days. The symptoms were only temporarily relieved with Imitrex and Plaintiff wanted to try different preventative/abortive medications. Plaintiff had not reduced the frequency of her estrogen injections as was discussed in July but was interested in doing so. FNP Sullivan and Plaintiff discussed increasing the duration between estrogen injections and Plaintiff was prescribed Imitrex and Migranal and given Phenergan for nausea and vomiting associated with the migraines.

In chart notes dates March 21, 2007, Plaintiff reported that she had been given her last hormone injection in November and that her headaches were more frequent and longer lasting. Plaintiff described them as occurring two to three times a month and lasting three to five days. Plaintiff told FNP Sullivan that she "loses at least 2 weeks of time per month to sleeping and locking herself in a cupboard in a dark room . . . ." Plaintiff also reported that none of the medications that used to work for her symptoms seemed to work any longer. Plaintiff was prescribed atenolol and asked to keep a headache diary. On April 26, 2007 Plaintiff reported that after a month of taking atenolol she had great improvement in her symptoms and had been migraine free for the previous two weeks. However, Plaintiff reported she was experiencing a

FINDINGS AND RECOMMENDATION – 7

"weird" feeling in her chest and cardiogram results showed bradycardia in the high 40's.  Due to

hypotension concerns FNP Sullivan directed Plaintiff to halve her atenolol dose.  On May 30,

2007, Plaintiff reported that on a half dosage of atenolol she had lost all benefit from the

medication.  She had experienced three major migraines in the previous month, one lasting five

days which caused her to remain in bed for its duration.  Plaintiff also reported that she was

unable to tolerate Imitrex when she experienced a migraine due to nausea.  FNP Sullivan

prescribed amitriptyline and Phenergan.  During a July 18, 2007 visit to the Community Health

Center, Plaintiff reported that she continued to suffer two to three migraine headaches per week

with only moderate relief from the prescribed medications.

## II.  **Plaintiff's Repetitive Use of Her Hands**

On July 9, 2003, Plaintiff was examined by Dr. Daniel Roberts.  Dr. Roberts assessed

Plaintiff with bilateral epicondylitis with the right "much worse" than the left.  He noted that

Plaintiff had failed conservative and aggressive management on the right and had measurable

right-sided weakness compared to the left which he believed was valid.  Dr. Roberts opined that

Plaintiff was unable to use her right hand repetitively for more than five to ten minutes at a time,

was able to sit or stand without limitation and was unable to do repetitive keyboarding.   In

commenting on her work/activity status, Dr. Roberts noted that Plaintiff was unable to do her job

but could do light duty that did not involve repetitive use of her right hand.

On July 21, 2003, licensed occupational therapist (OTL) Gail Frank completed a

functional capacity evaluation (FCE) of Plaintiff.  Repetitive movement tests of Plaintiff's elbow

flexion/extension and forearm pronation/supination classified Plaintiff's ability to perform these

movements in an eight hour work shift as "occasional" and Frank described these results as

valid.  Hand tests placed Plaintiff's right hand in the 59th  percentile rank for hand grip, the 69th

percentile for key pinch, the 4th percentile for tip pinch and the 1st percentile for palmar pinch. Plaintiff demonstrated good fine motor skills and ability to perform assembly tasks of pieces in the 1-4 mm range or larger at a non-production rate. Plaintiff was rated for work at the sedentary level. OTL Frank opined that pain or fear of pain may have limited Plaintiff's effort on occasion during these tests, leading to inconsistent performance and invalid results in some test categories.

In exam notes dated September 4, 2003, Dr. Paul Sternenberg noted that he had reviewed the FCE performed by OTR Frank and opined that Plaintiff could use her hands for repetitive fine manipulation and simple grasping but could not do keyboarding or pushing and pulling. He found her ranges of motion, manual motor strength and sensation consistent with what was found at her test. Dr. Sternenberg concluded that Plaintiff would need vocational rehabilitation given the extent of the pain she was experiencing and noted that Plaintiff's workers compensation "claim is closed at the sedentary-demand level."

In December 2005, after the hearing before the ALJ and at the request of the Agency, Jeffrey Solomon, D.O. performed a consultative neurological examination of Plaintiff. Dr. Solomon noted that Plaintiff showed normal fine motor dexterity and rapid alternative movements and a normal ability to grasp and release with both hands. Resisted wrist extension on both sides was painful with pain worse on the right side.

Also in December 2005, State agency physician Scott Pritchard, D.O. performed a record review and concluded that Plaintiff was limited in performing handling and fingering. Specifically, he opined that Plaintiff was capable of simple grasping without limitation and of constant fine manipulation but was precluded from keyboarding or pushing/pulling.

<u>**Testimony and Lay Witness Evidence**</u>

During the August 4, 2010 hearing before ALJ Madden, Jr. no testimony of any substance was taken.  The testimony described below and relied upon by the ALJ for the decision at issue was taken during the November 2, 2005 hearing held on Plaintiff's initial application for benefits.

1. <u>**Plaintiff**</u>

Plaintiff testified as follows:

Plaintiff has not worked since May of 2002 when she was let go from her medical transcriptionist position because pain in her hands and arms prevented her from keyboarding or typing.  She cares for her five year-old grandson who lives with her full-time.

Plaintiff had been on medication for migraines for eight or nine years but had been experiencing them for longer and that they had been worse in the last six or seven years. Plaintiff gets migraines an average of twice a month and they most often last three days.  Light and noise bother her and at the onset of a migraine she finds a dark room in which to stay quiet and sleep.  While experiencing a migraine she doesn't eat or go anywhere and her neighbors help care for her grandson and get him to and from school.  Taking Imitrex helps sometimes, but not always.  Plaintiff thought that she would miss, on average, five days of work a month due to her migraines.

When Plaintiff uses her hands and arms the discomfort is "always there."  After thirty minutes the discomfort is intolerable and she has to take at least a half hour break and ice, massage and rest her hands.  Gripping a pen, pencil, or keyboard mouse is very painful.

2. **Karen Wright**

Plaintiff's friend, Karen Wright, submitted a written statement dated September 9, 2003, in which she described the following:

Ms. Wright visits with Plaintiff two or three hours a week. Plaintiff cares for herself and her grandson. She can prepare simple meals and read and sew, although she is less able because of her conditions to do these latter two activities. She is no longer able to garden or work a daily job. Plaintiff finds it hard to sleep because of pain and her ability to complete tasks and use her hands is affected by her conditions.

3. **Vocational Expert**

After the 2005 hearing, ALJ Madden requested that Plaintiff undergo a comprehensive rehabilitation medical examination. The VE then provided her opinion in written responses to the ALJ's post-hearing interrogatories. The ALJ referred to these January 2006 responses in the 2010 disability determination at issue.

The ALJ posed a hypothetical to the VE describing an individual with Plaintiff's age, education and experience who could lift 20 pounds occasionally and 10 pounds frequently; could sit about 6 hours in an 8-hour workday and stand or walk at least 2 hours in an 8-hour workday; was precluded from pushing or pulling with her upper extremities but could occasionally operate foot controls with her right lower extremity and could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl but was precluded from climbing ladders, ropes or scaffolds. The described individual was also capable of simple grasping without limitation and constant fine manipulation but should not keyboard and should avoid concentrated exposure to hazards.

FINDINGS AND RECOMMENDATION – 11

The VE wrote that such an individual could not perform her past relevant work as a medical transcriptionist. The VE opined that, using transferable skills from her past relevant work, which included business procedure and equipment knowledge and skills and communication skills, Plaintiff could work as a receptionist, appointment clerk or motor transportation dispatcher.

### ALJ's Decision

In his decision dated August 18, 2010, ALJ Madden, Jr. found that Plaintiff had last met the requirements for insured status on March 31, 2009.

At the first step of the disability assessment process, he found that Plaintiff had not engaged in substantial gainful activity during the period between May 19, 2002 and July 30, 2007.

At the second step, the ALJ found that Plaintiff's extensor tendonitis of the bilateral forearms, right peroneal neuropathy secondary to degenerative disc disease of the lumbar spine and migraine headaches were "severe" impairments.

At the third step of his assessment, the ALJ found that between May 19, 2002 and July 30, 2007, these impairments, alone or in combination, did not meet or equal a presumptively disabling listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to the fourth step, the ALJ evaluated Plaintiff's residual functional capacity (RFC). He found that between May 19, 2002 and July 30, 2007, Plaintiff retained the functional capacity to perform a range of light work except:

> due to symptoms of pain and weakness attributable to her severe physical impairments she can perform tasks that involve no more than 2 hours of standing and/or walking, or more than 6 hours of sitting in an 8-hour workday. Such tasks may involve occasional foot controls with her right lower extremity, but must

avoid pushing and pulling with the bilateral upper extremities.  She may also engage in occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps/stairs, but must avoid climbing ladders/ropes/scaffolds.  She can engage in simple grasping and fine manipulation but should not use keyboards.  Due to her limited mobility, she should avoid workplace hazards, such as moving machinery and unprotected heights.

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms between May 19, 2002 and July 30, 2007 were not credible to the extent they were inconsistent with these conclusions.

At the fourth step, the ALJ found that between May 19, 2002 and July 30, 2007, Plaintiff could not perform her past relevant work.

At the fifth step, based upon the VE's 2006 opinion, the ALJ found that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.  The ALJ found that Plaintiff could work as a receptionist, an appointment clerk or motor transportation dispatcher.  Based upon those findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act between May 19, 2002 and July 30, 2007.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

FINDINGS AND RECOMMENDATION – 13

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred by failing to include any migraine-related limitations in his assessment of Plaintiff's residual functional capacity, making an improper transferable skills finding, making an improper conclusion at Step Five as to the occupations Plaintiff could perform and improperly rejecting the opinions of treating and examining physicians, Plaintiff's testimony and lay witness evidence.

## I. **ALJ's Evaluation of Plaintiff's Migraines**

In its memorandum opinion reversing the District Court and remanding for further proceedings, the Ninth Circuit found that

> The ALJ's conclusion that Bakewell's migraines remained under excellent control with medication is not supported by substantial evidence. The record indicates without contradiction that Bakewell's migraines incapacitated her for several days and that her persistent symptoms were not controlled effectively with medication. Accordingly, there is no substantial evidence supporting the ALJ's position that Bakewell's migraines do not "significantly limit[] [her] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), as the ALJ's conclusion

FINDINGS AND RECOMMENDATION – 14

was based upon the erroneous factual finding that Bakewell's migraines are under control.

After remand from the Ninth Circuit, the ALJ's 2010 decision included Plaintiff's migraines as a "severe impairment." Plaintiff contends, however, that the ALJ's RFC included no new limitations attributable to the migraines and that the 2010 RFC was, essentially, identical to the 2006 RFC. Plaintiff asserts that the ALJ failed to comply with the Ninth Circuit's directive that the ALJ "reassess Bakewell's claim consistent with this disposition" and argues that compliance with the directive necessitates a finding that Plaintiff's migraines are disabling.

After determining that Plaintiff's migraines were a severe impairment, the ALJ noted that "the claimant's complaints of several migraines per week are well documented in the record. The functional limitations imposed by these headaches, however, are difficult to assess." The ALJ found that Plaintiff's "headache symptoms, while unpleasant, would not cause the claimant to miss 2 or more days of work per month as long as she remains engaged in light work."

The Commissioner argues that, based on the record, the ALJ's finding as to the severity of Plaintiff's migraine symptoms was reasonable and correctly notes that the question before this court is whether there is substantial evidence to support the Commissioner's finding that Plaintiff was not disabled. See, e.g. Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).

While the parties argue the meaning and effect of the Ninth Circuit's order of remand on the ALJ's 2010 decision, the ALJ's conclusion that the functional limitations imposed by Plaintiff's migraines were "difficult to assess" and, ultimately, not disabling, must be evaluated within the framework of the five-step sequential inquiry set out above. The ALJ's disability determination as it pertained to Plaintiff's migraines was essentially based on the ALJ's interpretation of medical record evidence and a determination that Plaintiff's statements

FINDINGS AND RECOMMENDATION – 15

concerning the severity of her migraine symptoms were not credible to the extent they were inconsistent with the RFC.

Based upon a careful review of the ALJ's decision and the relevant portions of the medical record and Plaintiff's testimony, I conclude that the ALJ's determination that Plaintiff's migraines would not cause her to miss two or more days of work per month was not supported by substantial evidence.

A.  **Medical Record**

In support of his conclusion that Plaintiff was not disabled between May 19, 2002 and July 30, 2007, the ALJ cited medical records which indicated that Plaintiff's headaches were "stable" on medication, noted that Plaintiff had reported "great improvement in her symptoms" and opined that her most severe headache symptoms occurred when treatment providers decreased her dosage.  The ALJ also asserted that Plaintiff denied any motor symptoms or visual disturbances and that a brain MRI revealed no abnormalities.

These assertions do not provide substantial evidence for the ALJ's conclusion that Plaintiff's migraines were not disabling.  In chart notes from a July 12, 2006 visit with Robert Eckert, MD, who evaluated Plaintiff for purposes of her disability insurance application, Dr. Eckert noted that Plaintiff had a history of severe migraines and assessed her as having "[m]ultiple chronic stable musculoskeletal problems causing disability" and "[m]igraines, stable."  As noted above, records from Plaintiff's office visits during this same period reflect that Plaintiff was experiencing multiple migraines a month and in October 2006 she reported that Imitrex was no longer effectively controlling her migraine symptoms. On April 26, 2007, Plaintiff reported that after a month of taking a new drug, atenolol, she had "great improvement in her symptoms" and had been migraine free for two weeks.  However, FNP Sullivan reduced

Plaintiff's atenolol dosage after Plaintiff exhibited symptoms of hypotension, apparently as a result of taking the medication. At the decreased dosage level, Plaintiff lost all therapeutic benefit of the atenolol and, as noted above, her providers continued, without great success, to adjust her medications in order to try and control the frequency and severity of her migraines.

In addition, as detailed above, medical records reflect Plaintiff's multiple reports that her migraines caused nausea, vomiting, and photosensitivity. During the October 4, 2006 office visit to which the ALJ cites in support of his assertion that Plaintiff denied any motor symptoms or visual disturbances, Plaintiff denied "visual disturbances, nausea, [or] vomiting, *unrelated to when she is suffering from a migraine."* (emphasis added).

The substantial and uncontroverted evidence supports only the conclusion that Plaintiff's migraines occurred several times a month or more and that they incapacitated her for several days, accompanied by nausea, vomiting and photosensitivity and caused Plaintiff to confine herself to a dark space and sleep for several days at a time. The ALJ's determination that Plaintiff's migraines did not so limit her was not supported by substantial evidence in the record. This limitation would, of course, preclude competitive employment and, accordingly, the Commissioner's decision should be reversed and this action should be remanded to the Agency for an award of benefits. See Smolen v. Chater,  80 F. 3d 1273, 1292 (9th Cir. 1996) (court credits evidence and remands for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited).

FINDINGS AND RECOMMENDATION – 17

B. **ALJ's Assessment of Plaintiff's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is not supported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)( *en banc* )). If a claimant produces the requisite medical evidence and there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible. Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002); SSR 96–7p. If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96–7. An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities of daily living. Thomas, 278 F.3d at 958–59 (9th Cir. 2002).

As noted above, the ALJ found that Plaintiff's statements concerning the severity of the pain caused by her migraines were not credible to the extent they were inconsistent with the

FINDINGS AND RECOMMENDATION – 18

RFC.  Because there was no question that Plaintiff's migraines could be expected to cause some degree of symptoms and no evidence of malingering, the ALJ was required to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.

In support of his findings, the ALJ cited treatment records that noted Plaintiff had reported "great improvement in her symptoms" and denied any motor symptoms or visual disturbances.  The ALJ also noted that in July 2007, Plaintiff reported to her treatment providers that she continued to suffer two to three headaches a week with "moderate" relief from medication and in 2008 told providers that she experienced one to two headaches per month.

The ALJ next noted that the written statement submitted by lay witness Karen Wright in September 2003 described Plaintiff as able to manage her personal care, prepare simple meals, care for her grandson and perform other activities of daily living.  The ALJ remarked that Ms. Wright's report was "not consistent with an individual who is suffering from a debilitating medical condition."

These are not clear and convincing reasons for finding Plaintiff less than wholly credible and they are not supported by substantial evidence in the record.  As discussed above, Plaintiff's long history of migraine headaches, their symptoms and her medical providers' attempts at treatment is extensively and uncontrovertibly documented in the record.  The out-of-context excerpts cited by the ALJ mischaracterize Plaintiff's reports of her symptoms and fail to acknowledge the consistency with which Plaintiff described and sought treatment for her migraines.

In addition, Plaintiff's description of her activities of daily living is not inconsistent with a finding that her migraines were disabling.  Under the Act, claimants need not be utterly incapacitated to be eligible for benefits, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), and

many activities of daily living "are not easily transferable to what may be the more grueling

environment of the workplace, where it might be impossible to periodically rest or take

medication." Id.  The record includes evidence that with limitations imposed by her other

impairments, Plaintiff was able to perform some household chores and care for her grandson.

However, there is no evidence to contradict that when Plaintiff experienced a migraine she

remained in bed in a dark room for several days, not going anywhere and relying upon the

assistance of neighbors to check on her and care for her grandson.

Here, the ALJ did not provide adequate reasons for discounting Plaintiff's testimony or

cite substantial evidence supporting the conclusion that Plaintiff's migraine symptoms were not

anything more than "unpleasant" and would not cause her to miss two or more days of work per

month.  Plaintiff's testimony, if accepted, and the substantial medical evidence contained in the

record before this court require a finding of disability.

Where, as here, an ALJ improperly rejects a claimant's testimony which would require a

finding of disability if believed, courts generally credit the testimony as true and remand the

action for an award of benefits.   Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995). That is

appropriate here.

Based upon the ALJ's failure to provide legally sufficient reasons for rejecting Plaintiff's

testimony and the absence of substantial evidence supporting his conclusion that Plaintiff's

migraines were not disabling, this action should be remanded for an award of benefits.  Though

this conclusion makes it unnecessary to do so, I will briefly address the ALJ's evaluation of Dr.

Roberts' opinion, as well as other issues Plaintiff raises here,  in order to create a full record for

review.

FINDINGS AND RECOMMENDATION – 20

II. **ALJ's Assessment of Dr. Roberts' Opinion**

Plaintiff contends that the ALJ erred by failing to provide adequate reasons for rejecting Dr. Daniel Roberts' 2003 assessment of limitations on Plaintiff's repetitive use of her right hand. In its remand order, the Ninth Circuit found that the ALJ had erred in his original determination because he had "ignored the opinion of Dr. Roberts entirely" by neither crediting nor giving any reason for rejecting his assessment.

Plaintiff's argument that the ALJ has again failed to either credit or give reasons for rejecting Dr. Roberts' opinion is well taken. In his 2010 decision, the ALJ acknowledges Dr. Roberts' opinion that Plaintiff was unable to do repetitive motions with her right hand for more than five to ten minutes at a time, and gives "significant weight" to his assessment of Plaintiff's exertional capacity. The ALJ also finds that Dr. Roberts' reports generally support the conclusion of treating physician Paul Sternenberg, M.D., who opined that Plaintiff would likely require vocational rehabilitation "to perform work at the sedentary level." However, the ALJ gives no reasons for subsequently rejecting Dr. Roberts' opinion regarding Plaintiff's repetitive use of her hand.

The ALJ instead gave great weight to and apparently adopted the opinion of Agency examining physician Dr. Pritchard, who concluded that Plaintiff remained capable of performing light work with certain limitations. Although the ALJ does not reference Dr. Pritchard's specific conclusions, Dr. Pritchard's report notes that he found Plaintiff capable of simple grasping without limitation and of constant fine manipulation. There is no reference in Dr. Pritchard's report to Dr. Roberts' opinion or to any limitations to Plaintiff's repetitive use of her right hand.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must

provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must support the rejection of an examining physician's opinion that is contradicted by another physician with specific and legitimate reasons that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995) .

The ALJ did not provide any basis, let alone a sufficient basis, for rejecting Dr. Roberts' opinion that Plaintiff should avoid the repetitive use of her right hand.  Even assuming that the ALJ's reference to Dr. Pritchard's opinion constituted his reasoning for rejecting Dr. Roberts' assessment, a non-examining physician's opinion does not constitute "substantial evidence" that supports rejection of an examining physician's opinion. See, e.g.,  Lester v. Chater, 81 F.3d 821, 830 (1995) .

### III.  **Plaintiff's Ability to Perform Other Work**

An ALJ's hypothetical to a VE must set out all of a claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The ALJ's description of the claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180, F.3d 1094, 1101 (9th Cir. 1999). If the assumptions included in the vocational hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. Gallant, 753 F.2d at 1456.

For the reasons discussed above, the ALJ's vocational hypothetical failed to include all of Plaintiff's limitations.  As a result, the VE's testimony that an individual with the described functional capacity could perform work as a receptionist, an appointment clerk or motor transportation dispatcher lacked evidentiary value.

FINDINGS AND RECOMMENDATION – 22

IV. **Plaintiff's Transferable Skills**

Plaintiff argues that the ALJ erred in finding that she had transferable skills from her past relevant work.  She argues that "knowledge of business procedure and equipment, as well as communication skills" are not "skills" as defined by the Agency.  The Commissioner argues that the ALJ was entitled to rely upon the VE's opinion testimony regarding transferable skills.

According to Social Security Ruling 82-41(2)(a), a "skill" is

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

Transferability "means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82–41(2)(b).  Furthermore, "[a]ll functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability. . . .Similarly, environmental, manipulative, postural, or mental limitations may prevent a claimant from performing semiskilled or skilled work activities essential to a job." SSR 82-41(4)(b).  When transferability of skills is an issue an ALJ is required to make particular findings of fact and include them in the written decision.  SSR 82-41(6).  Findings should be supported with appropriate documentation and must identify work skills acquired by the claimant and the specific occupations to which the acquired work skills are transferable.  Id.

My conclusion that this action should be remanded for an award of benefits based on the reasons discussed above makes it unnecessary to reach the transferable skills issue.  However, I briefly note that while the ALJ failed to consider the effect on transferability of the improperly omitted functional limitations discussed above, he otherwise complied with the guidelines

FINDINGS AND RECOMMENDATION – 23

established by the Agency in reaching his conclusion as to Plaintiff's transferable skills and I

decline to make an assessment of those skills because such a finding is for the ALJ and not the

court to make.  See SSR 82-41; Bray v. Comm'r., 554 F.3d 1219, 1225 (9th Cir. 2009).


### Conclusion

For the reasons set out above, a judgment should be entered REVERSING the decision of

the Commissioner and REMANDING this action to the Agency for a finding of disability and an

award of benefits for the period between May 19, 2002 and July 30, 2007.


### Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due August 27, 2012 .  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 9th day of August, 2012.



/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge



FINDINGS AND RECOMMENDATION – 24